IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE DENNIS ROUNDS, JR.,

      Petitioner,               No. CIV S-04-1232 LKK DAD P

      vs.

CALIFORNIA DIRECTOR OF
CORRECTIONS, et al.,

      Respondents.        FINDINGS & RECOMMENDATIONS

_____/

      Petitioner is a state prisoner proceeding pro se with an application for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a prison disciplinary
conviction that resulted from a rules violation report issued against him on July 23, 2001.  He
seeks relief on the grounds that his disciplinary conviction and sentence violate the Ex Post Facto
Clause and that his right to due process was violated by the manner in which the disciplinary
proceeding was conducted.  Upon careful consideration of the record and the applicable law, the
undersigned will recommend that petitioner's application for habeas corpus relief be denied.

BACKGROUND

      Petitioner is incarcerated pursuant to a judgment of conviction imposed in 1982
by the Riverside County Superior Court after petitioner entered a plea of guilty to one count of

1

1   murder in the second degree and one count of attempted murder, with a firearm enhancement on

2   each count.  On February 7, 1983, petitioner was sentenced to prison for a term of 15 years to life

3   on the murder count and a concurrent 7 year term on the attempted murder count, with prison

4   terms on the firearm enhancements stayed.  (Pet. at pages numbered (2) and A-1.)

5            On July 26, 2001, Correctional Officer Blackwell wrote a rules violation report

6   charging petitioner with "conduct which could lead to violence."  Officer Blackwell alleged that

7   on July 23, 2001, he "observed" petitioner "out of bounds on the day-room floor."  (Answer, Ex.

8   D at consecutive p. 1.)  Blackwell followed petitioner into his dorm and informed him of the

9   requirements of an existing lockdown involving Black inmates.  (Id.)  Petitioner "took a large

10  step toward [Blackwell] and stood about six inches from my face and stated, "You are a racist;

11  you don't know who the fuck you are dealing with.  I don't give a fuck about the lock-down."

12  (Id.)  Officer Blackwell ordered petitioner to step back, but petitioner did not comply with that

13  order.  (Id.)  Officer Blackwell then ordered petitioner to turn around so that he could place him

14  in restraints.  (Id.)  Petitioner eventually complied with this order, at which point he was placed

15  in a holding cell.  (Id.)

16           Petitioner was given a copy of the rules violation report on July 27, 2001.  (Pet. at

17  A-3.)  Petitioner requested a staff assistant to help him prepare for the disciplinary hearing.

18  (Answer, Ex. D at consecutive p. 4.)  Petitioner also requested an investigative employee.  (Id.)

19  Prison officials did not assign a staff assistant to assist petitioner because he "[did] not meet the

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

1  criteria" set forth in California Code of Regulations §§ 3315(d)(2).[1]  (Id.)  Petitioner did receive

2  the assistance of an investigative employee who conducted interviews with petitioner, Officer

3  Blackwell, a staff witness, and several inmate witnesses and wrote an investigative report.  (Id. at

4  consecutive pgs. 4-5.)  Petitioner requested that Officer Blackwell and three inmates be present at

5  the disciplinary hearing as witnesses.  (Id. at consecutive p. 2.)

6           On August 11, 2001, the disciplinary hearing on the rules violation report was

7  held.  (Id. at consecutive pg. 1. )  Petitioner was advised of the charges against him and the

8  purpose of the hearing.  (Id.)  Petitioner did not object to proceeding with the hearing. (Id.)

9  Petitioner pled not guilty to the charge against him, stating:

10         First, I wasn't out of bounds.  I was returning from the bathroom
           and I stopped to talk to my friend for a minute.  Officer Demery
11         had only flashed us once with her flashlight when Sergeant
           Blackwell came into the building.  Also, I did not tell Sergeant
12         Blacwell he was a racist.  I said the reason for the lockdown was
           racist.

13  /////

14

---

15  [1]  That code section provides, in relevant part, as follows:

16         (d) An inmate shall be assigned an employee to assist in the
           investigation of matters pertaining to a disciplinary action when the
17         chief disciplinary officer or designee determines the necessity
           based on the following criteria.
18
           (2) Staff Assistant.
19
           (A) The inmate shall be assigned a staff assistant, as described in
20         section 3318(b), to assist in the investigation, preparation, and
           presentation of a defense at the disciplinary hearing if the chief
21         disciplinary officer or designee determines:

22         1. The inmate is illiterate or non-English speaking.

23         2. The complexity of the issues are such that assistance is
           necessary so the inmate comprehends the nature of the charges or
24         the disciplinary process

25         3. The nature of the inmate's need for assistance requires a
           confidential relationship as described in subsection 3318(b)(2)(A).
26

3

1  (Id.)  At petitioner's request, Officer Blackwell was called as a witness.  (Id. at consecutive p. 2.)

2  Petitioner's request for the three inmate witnesses was denied on the grounds that they "had no

3  relevant or additional information, based on their statements in the Investigative Employee's

4  Report."  (Id.)[2]

5          Petitioner was found guilty of "conduct which could lead to violence," based on

6  the evidence introduced at the hearing, the rules violation report and the investigative employee's

7  report.  (Id.) Petitioner was assessed a loss of 90 days behavioral credits for this Division D

8  offense.  (Id. at consecutive p. 3.)  At the second level review of petitioner's administrative

9  appeal, petitioner's offense of conviction was downgraded to a "Division F" offense and his

10 punishment was reduced to a loss of 30 days behavioral credits.  (Pet., Ex. I.)

11 /////

12 /////

13

14     [2]  California Code of Regulations § 3315(e) provides, in relevant part, as follows:

15         (e) Witnesses. An inmate may request that friendly and adverse
           witnesses attend the hearing.
16
17         (1) Requested witnesses shall be called unless the official
           conducting the hearing denies the request for one of the following
           reasons:
18
19         (A) The appearance would endanger the witness.

20         (B) The official determines that the witness has no relevant or
           additional information.
21
           (C) The witness is unavailable.
22
                              * * *
23
           (4) The reporting employee shall attend the disciplinary hearing if
24         requested by the inmate.

25         (5) Under the direction of the official conducting the disciplinary
           hearing, the inmate has the right to ask questions of all witnesses
26         called.

1    Respondent concedes that petitioner exhausted the administrative appeal process

2   and his state judicial remedies with respect to the July 23, 2001 rules violation report and

3   resultant disciplinary proceeding.  (Answer at 2.)

4                                                ANALYSIS

5   I.  Standards of Review Applicable to Habeas Corpus Claims

6    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

7   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

8   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

9   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

10   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

11   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

12   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

13   (1972).

14    This action is governed by the Antiterrorism and Effective Death Penalty Act of

15   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

16   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

17   habeas corpus relief:

18                 An application for a writ of habeas corpus on behalf of a
              person in custody pursuant to the judgment of a State court shall
19                 not be granted with respect to any claim that was adjudicated on
              the merits in State court proceedings unless the adjudication of the
20                 claim -

21                 (1) resulted in a decision that was contrary to, or involved
              an unreasonable application of, clearly established Federal law, as
22                 determined by the Supreme Court of the United States; or

23                 (2) resulted in a decision that was based on an unreasonable
              determination of the facts in light of the evidence presented in the
24                 State court proceeding.

25   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

26   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

1     The court looks to the last reasoned state court decision as the basis for the state

2  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

3  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

4  federal habeas court independently reviews the record to determine whether habeas corpus relief

5  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

6  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

7  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

8  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

9  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

10  1167 (9th Cir. 2002).

11  II.  Petitioner's Claims

12       A.  Ex Post Facto Clause

13         Petitioner claims that "the disciplinary procedures and sanction applied" violated

14  the Ex Post Facto Clause because he was deprived of behavioral credits "under prior law . . . by

15  use of newly enacted disciplinary procedures."  (Points and Authorities attached to Petition

16  (hereinafter P&A) at 2; Traverse at 2.)  Petitioner states that California law regarding "the

17  application of custody credits to [reduce] the fixed portion of [a prison] sentence" was "modified

18  on January 1, 1983," after petitioner committed his crime of conviction in 1982.  (Pet. at A-2;

19  Traverse at 14.)  Petitioner argues that he "has a due process liberty interest in the disciplinary

20  procedures as incorporated and adopted . . . prior to legislative amendment  . . . on January 1,

21  1983."  (Traverse at 2.)  Petitioner also alleges that "because he is bound by [the law] as existed

22  on November 7, 1978, a subsequent law affecting his sentence is retrospective for ex post facto

23  principles."  (Id. at 4.)  He contends that he is "entitled to the old credit forfeiture statue [sic] and

24  its procedures as existed prior to January 1, 1983."  (Id. at 23.)

25         In essence, petitioner is arguing that prison authorities were bound by the

26  regulations governing the forfeiture of prisoners' credits that were in effect at the time of his

1   1982 conviction and that, because his 30 day credit loss was imposed pursuant to more onerous

2   regulations adopted after 1982, his disciplinary conviction violates the Ex Post Facto Clause.  Put

3   another way, petitioner alleges that behavior credits earned under regulations in effect in 1982

4   can only be taken away pursuant to regulations that were also in effect in 1982.  (Id.)

5                  The California Superior Court rejected petitioner's claims in this regard,

6   reasoning as follows:

7           Upon reading the application filed herein, the Court finds that
            Petitioner fails to make a prima facie showing that the Department
8           of Corrections violated his due process rights by applying credit
            forfeiture statute (sic) in an ex post facto manner.  (California
9           Rules of Court Section 4.551 subdivision 9(c)(1); People v. Duvall
            (1995) 9 Cal.4th 464, 474-475.)

10

11          Here, the Superior Court of California, County of Riverside,
            sentenced petitioner on February 7, 1983.  The Legislature
            amended the procedures for deducting credits from inmates in
12          January of 1983.  As set forth in Ramirez, even if petitioner was
            sentenced to prison prior to the new procedures set forth in Penal
13          Code section 2932, it's applicability to his case is proper because
            the behavior for which it was implemented occurred after its
14          passage.  (In re Ramirez 39 Cal.3d 931).

15          Petitioner's due process claims also have no merit because they
            hinge on the fact that the California Department of Corrections did
16          not apply the old credit forfeiture statute and its procedures.
            Therefore, petitioner has not stated facts upon which relief can be
17          granted.

18   (Answer, Ex. F.)

19                  The United States Constitution prohibits states from passing any "ex post facto

20   Law."  U.S. Const., Art. I, § 10.  A law is an ex post facto law if it meets two conditions.  First,

21   "it must apply to events occurring before its enactment."  Weaver v. Graham, 450 U.S. 24, 29

22   (1981).  "In other words, it must be retrospective."  Hunter v. Ayers, 336 F.3d 1007, 1011 (9th

23   Cir. 2003).  Second, it must disadvantage the person affected by either altering the definition of

24   criminal conduct or increasing the punishment for the crime.  Id.  The ex post facto prohibition

25   applies in the context of prison time credits.  Weaver, 450 U.S. at 29 (ex post facto prohibition

26   applied to state statute reducing the amount of good time credits which could be earned by

7

1    prisoners); <u>Ayers</u>, 336 F.3d at 1011 (ex post facto prohibition applied to regulations that

2    eliminated restoration of forfeited good time credits for serious infractions).  In the context of

3    prison time credits, "the core question for ex post facto purposes is whether the changed law

4    imposes 'punishment more severe than the punishment assigned by law when the act to be

5    punished occurred.'"  <u>Hunter</u>, 336 F.3d at 1011 (quoting <u>Weaver</u>, 450 U.S. at 30.)

6             There appears to be no dispute that petitioner was sanctioned pursuant to inmate

7    disciplinary regulations that were in effect at the time he committed the violations alleged in the

8    July 23, 2001 rules violation report.  Petitioner suffered a loss of credits pursuant to Cal. Code

9    Regs. tit. 15, § 3323(h), which provides that upon a finding of guilt for a Division F offense, a

10   prisoner shall forfeit between 0 - 30 days of time credits.  Section 3323(h) was in effect at the

11   time of petitioner's in-prison conduct on July 23, 2001, and also at the time of his August 11,

12   2001 disciplinary conviction.  Under these circumstances, petitioner's conviction and sentence do

13   not violate the Ex Post Facto Clause.  <u>See Ayers</u>, 336 F.3d at 1011-12.  An ex post facto

14   violation would arguably occur only if the relevant regulations were amended after the date of

15   petitioner's in-prison conduct constituting the disciplinary offense.  (<u>Id.</u>)

16            Petitioner contends that the August 11, 2001 prison disciplinary conviction and

17   resulting sanction have negatively affected his ability to obtain release on parole and, therefore,

18   the law in effect at the time of his 1982 criminal conviction must control the conduct of his

19   disciplinary proceeding.  (Traverse at 3.)  Similarly, petitioner maintains that the ability to earn

20   good conduct credits is an "essential element of his sentence and the deduction for misconduct

21   affects the punishment of the offense for which he was convicted."  (<u>Id.</u>)  He argues that "the

22   disciplinary statutes enacted or amended by legislature or the voters after his offense occurred

23   cannot be applied to alter the condition or revoke his preexisting parole eligibility."  (<u>Id.</u>)

24   Petitioner states, "although the new disciplinary regulations were applied in a 2001 disciplinary

25   hearing, it affected the punishment Petitioner received for crime committed in 1981" because

26   /////

1    "parole eligibility affects the length of a prison term and therefore affects the measure of

2    punishment attached to the original crime." (Id. at 16.)

3            Petitioner has cited no authority for the proposition that a forfeiture of time credits

4    imposed as a disciplinary sanction pursuant to regulations enacted after the date of a prisoner's

5    underlying conviction violates the Ex Post Facto Clause simply because of the speculative

6    possibility that the disciplinary conviction might lengthen the original sentence by delaying his

7    release on parole.  Of course, a "speculative and attenuated possibility" of increasing an

8    inmate's punishment is "insufficient to violate the ex post facto clause."  Ayers, 336 F.3d at 1012

9    (quoting California Department of Corrections v. Morales, 514 U.S. 499, 509 (1995)).  On the

10   contrary, as the California Supreme Court has observed,

11           If any aspect of prison life is unconnected to a prisoner's original
             crime, it would seem to be the sanctions for his misconduct while
12           in prison. Accordingly, the 1982 amendments, which change the
             sanctions for that misconduct, do not relate to petitioner's original
13           crime and are not retrospective under Weaver [v. Graham ]."

14                                      * * *
             The Weaver court held that the opportunity to earn good time
15           credits was "one determinant of petitioner's [initial] prison term -
             and that his effective sentence is altered once this determination is
16           changed." ( Weaver, supra, 450 U.S. at p. 32, 101 S.Ct. at p. 966.)
             There is a critical difference between a diminution of the ordinary
17           rewards for satisfactory performance of a prison sentence - the
             issue in Weaver - and an increase in sanctions for *future*
18           *misbehavior* in prison - which is at issue here. Here, petitioner's
             opportunity to earn good behavior and participation credits is
19           unchanged. All that has changed are the sanctions for prison
             misconduct. Unlike Weaver, petitioner's effective sentence is not
20           altered by the 1982 amendments unless petitioner, by his own
             action, chooses to alter his sentence. We cannot conclude that
21           sanctions for future prison misconduct that *might* occur were "one
             determinant" of petitioner's *initial* sentence.

22

23   In re Ramirez, 39 Cal. 3d 931, 936-37 (1985) (emphasis in original).

24           The issue presented by this case is readily distinguishable from that posed in the

25   cases cited by petitioner in which laws affecting the length of prison sentences were changed for

26   all prisoners, regardless of their in-prison behavior.  Cf. Lynce v. Mathis, 519 U.S. 433, 436

1  (1997) (state statute which retroactively cancelled provisional early release credits awarded to

2  alleviate prison overcrowding violated Ex Post Facto Clause by increasing prisoner's

3  punishment); Nulph v. Faatz, 27 F.3d 451, 455 (9th Cir. 1994) (statute which changed the

4  sentencing "matrix" for serious offenders violated Ex Post Facto Clause).  Here, petitioner

5  effectively altered his own sentence as a result of his misbehavior in prison.

6          The California Department of Corrections properly applied the regulations in

7  effect at the time of petitioner's in-prison misconduct that resulted in a forfeiture of petitioner's

8  good time credits. Those regulations were in force before the misconduct and as a result there

9  was no ex post facto violation.  Ayers, 336 F.3d at 1011-12.  Put another way, petitioner has

10  failed to demonstrate the retroactive application of a state law or administrative rule to his case.

11  The state court's rejection of petitioner's ex post facto claim is therefore neither contrary to, nor

12  an unreasonable application of, clearly established federal law and should not be set aside.  See

13  Weaver, 450 U.S. at 29.

14          B.  Violations at Disciplinary Hearing

15          Petitioner also appears to allege that his right to due process was violated at his

16  August 11, 2001 disciplinary hearing because: (1) the hearing was not conducted within ten days

17  of the written notice, in accordance with prison disciplinary procedures; (2) he was improperly

18  denied a staff assistant at the hearing; and (3) his request for three inmate witnesses at the hearing

19  was improperly denied.  (P&A at 2.)  To the extent that petitioner's due process claim is

20  intertwined with his contention that the Ex Post Facto Clause was violated by the use of post-

21  1982 changes in procedures relating to prison disciplinary proceedings, his claim should be

22  rejected for the reasons set forth above.  However, to the extent that petitioner is arguing his right

23  to due process was violated by procedural deficiencies at his August 11, 2001 disciplinary

24  hearing, the court will address that claim below.

25          It is well established that inmates subjected to disciplinary action are entitled to

26  certain procedural protections under the Due Process Clause but are not entitled to the full

1   panoply of rights afforded to criminal defendants.  Wolff v. McDonnell, 418 U.S. 539, 556

2   (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal, 549

3   F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the

4   least amount of due process along the prosecution continuum).  An inmate is entitled to advance

5   written notice of the charge against him as well as a written statement of the evidence relied upon

6   by prison officials and the reasons for any disciplinary action taken.  See Wolff, 418 U.S. at 563.

7   In the disciplinary hearing context, an inmate does not have a right to counsel, retained or

8   appointed, although illiterate inmates are entitled to assistance.  Id. at 570.

9          An inmate has a right to a hearing at which he may "call witnesses and present

10  documentary evidence in his defense when permitting him to do so will not be unduly hazardous

11  to institutional safety or correctional goals."  Wolff, 418 U.S. at 566.  See also Ponte v. Real, 471

12  U.S. 491, 495 (1985).  The right to call witnesses is subject to the "mutual accommodation

13  between institutional needs and objectives and the provisions of the Constitution."  Baxter v.

14  Palmigiano, 425 U.S. 308, 321 (1976) (citing Wolff, 418 U.S. at 556).  See also Serrano v.

15  Francis, 345 F.3d 1071, 1077 (9th Cir. 2003); Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir.

16  1989). "Prison officials must have the necessary discretion to keep the hearing within reasonable

17  limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as

18  well as to limit access to other inmates to collect statements or to compile other documentary

19  evidence."  Wolff, 418 U.S. at 566.   Prison officials may, but are not required to, explain their

20  reasons limiting an inmate's efforts to defend himself.  Ponte, 471 U.S. at 497.  Should prison

21  officials refuse to call a witness, they should explain their reasons in disciplinary proceedings or

22  later in court proceedings.  Id.; see also Bostic, 884 F.2d at 1274 (burden is on prison officials to

23  provide justifications for refusal).  So long as those reasons "are logically related to preventing

24  undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due

25  process requirements as outlined in Wolff."  Ponte, 471 U.S. at 497.  However, as a general rule,

26  /////

1   inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison

2   disciplinary hearings. Id. at 510 (Marshall, J., dissenting). See also Baxter, 425 U.S. at 322-23.

3           The disciplinary hearing must be conducted by a person or body that is

4   "sufficiently impartial to satisfy the Due Process Clause." Wolff, 418 U.S. at 571. The decision

5   rendered on a disciplinary charge must be supported by "some evidence" in the record. Hill, 472

6   U.S. at 455. A finding of guilt cannot be "without support" or "arbitrary." Id. at 457. The

7   "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any

8   reliable evidence in the record that could support the conclusion reached by the fact finder.

9   Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56 and Cato v.

10  Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). See also Barnsworth v. Gunderson, 179 F.3d 771,

11  773 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Determining

12  whether this standard is satisfied does not require examination of the entire record, independent

13  assessment of the credibility of witnesses, or the weighing of evidence. Toussaint v. McCarthy,

14  801 F.2d 1080, 1105 (9th Cir. 1986). Indeed, in examining the record, a court is not to make its

15  own assessment of the credibility of witnesses or re-weigh the evidence. Hill, 472 U.S. at 455.

16  The question is whether there is any reliable evidence in the record that could support the

17  decision reached. Toussaint, 801 F.2d at 1105.

18          Where a protected liberty interest exists, the requirements imposed by the Due

19  Process Clause are "dependent upon the particular situation being examined." Hewitt v. Helms,

20  459 U.S. 460, 472 (1983). The process due is such procedural protection as may be "necessary to

21  ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S.

22  210, 228 (1990). In identifying the safeguards required in the context of disciplinary

23  proceedings, courts must remember "the legitimate institutional needs of assuring the safety of

24  inmates and prisoners" and avoid "burdensome administrative requirements that might be

25  susceptible to manipulation." Hill, 472 U.S. at 454-55. The requirements of due process in the

26  prison context involve a balancing of inmate rights and institutional security concerns, with a

1   recognition that broad discretion must be accorded to prison officials.  Wolff, 418 U.S. at

2   560-63; see also Baxter, 425 U.S. at 324.

3                  This court concludes that petitioner received all the process that was due to him in

4   connection with the August 1, 2001 disciplinary hearing.  Petitioner received advance written

5   notice of the charge against him as well as a written statement of the evidence relied upon by

6   prison officials and the reasons for the disciplinary action taken.  See Wolff, 418 U.S. at 563.

7   Petitioner was allowed to call Correctional Officer Blackwell as a witness at the disciplinary

8   hearing.  Although petitioner was not allowed to call the three inmate witnesses, prison

9   authorities explained their reason for refusing to allow these witnesses to testify.  The reason

10  given, that after interviews by the assigned investigative employee it was determined that the

11  witnesses had no relevant evidence to provide, is neither unreasonable nor improper, since

12  prisoners do not have the right to call witnesses at disciplinary hearings whose testimony would

13  be irrelevant, repetitive or unnecessary.  Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002).

14  Cf. Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996) (a blanket policy denying permission

15  for inmates to have witnesses present during disciplinary hearings would violate due process).  In

16  addition, the record reflects that the statements given to the investigative employee by the three

17  inmate witnesses were generally consistent in all material respects with Officer Blackwell's

18  allegations contained in the rules violation report and were therefore repetitive and unnecessary.

19  (Answer, Ex. D at consecutive pgs. 6-7.)  Petitioner is not illiterate and he has not demonstrated

20  that the issues involved in the disciplinary charge were complex or that he was unable to collect

21  and present the evidence necessary for an adequate defense without the assistance of a staff

22  member.  Cf. Wolff, 418 U.S. at 570 (where an illiterate inmate is involved or where the issues

23  are complex, the inmate "should be free to seek the aid of a fellow inmate, or if that is forbidden,

24  to have adequate substitute aid in the form of help from the staff or from a sufficiently competent

25  inmate designated by the staff").

26  /////

1    There was "some evidence" to support the decision rendered on the disciplinary

2    charge, in the form of the investigative report, the rules violation report, and the testimony of

3    Officer Blackwell at the hearing.  This is true even though petitioner's testimony would have

4    supported an acquittal on the disciplinary charge.  There is no credible evidence that the decision

5    maker was not impartial.  Finally, even assuming arguendo that the disciplinary hearing was not

6    conducted within ten days of the written notice, petitioner has failed to demonstrate that the

7    length of time between notice of the charges and the hearing resulted in any fundamental

8    unfairness.

9    Under the circumstances presented here, petitioner's right to due process was not

10   violated at the April 11, 2001 disciplinary hearing.  The decision of the state courts to the same

11   effect is not contrary to or an unreasonable application of the federal principles set forth above.

12   Accordingly, petitioner is not entitled to relief on this claim.[3]

13                                CONCLUSION

14   For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

15   application for a writ of habeas corpus be denied.

16   These findings and recommendations are submitted to the United States District

17   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

18   days after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21   shall be served and filed within ten days after service of the objections.  The parties are advised

22

23        [3] In his traverse, petitioner makes additional allegations regarding procedural
24   irregularities in the conduct of the disciplinary proceeding. (Traverse at 2-4.)  However, "[a]
     Traverse is not the proper pleading to raise additional grounds for relief." Cacoperdo v.
25   Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).  In any event, even considering petitioner's
     additional allegations, after a review of the record this court concludes that petitioner's right to
26   due process was not violated by any of the alleged procedural irregularities at the disciplinary
     hearing.

                                      14

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: March 14, 2008.

4

5  _____

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:8
   rounds1232.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26